**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

BRENT CURTIS SCHWERTZ,

  *Plaintiff,*

v.

MISSOURI DEPARTMENT OF
CORRECTIONS et al.,

  *Defendant.*

)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 4:25-cv-00135-JMD

## MEMORANDUM AND ORDER

*Pro se* inmate Brent Curtis Schwertz is a registered member of the Cherokee Nation of Oklahoma. He brings a claim under the First Amendment, asserting that prison officials prevented him from transferring eagle feathers to his son, thus violating his religious beliefs. ECF 1 at 4. Schwertz is proceeding *in forma pauperis*, so the Court must screen his complaint for frivolity, maliciousness, and failure to state a claim. 28 U.S.C. § 1915(e)(2). Schwertz pleads sufficient facts to survive this initial review. The Court therefore requests that the Clerk of Court issue process on the defendants.

### Background

The Court accepts Schwertz's well-pleaded facts as true and liberally construes his complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Schwertz alleges he received a federal permit for eagle feathers to be delivered to his prison. But the feathers sent exceeded the prison's maximum authorized length of 12 inches. Under the prison's own policies, officials were supposed to notify Schwertz that the items were too long and give him an opportunity to send them out of the prison with a visitor. Schwertz states that the officials mailed his feathers back to the permitting agency without notifying him or letting him arrange for another to pick them up from the prison. And he provides a letter he received

1

from one defendant stating: "I hope to have those [feathers] mailed before you get this [message]." ECF 1-1 at 39. Because of these actions, Schwertz says that he was "deprived of bestowing" his son with the feathers as required under "a sacred passed down Cherokee tradition." ECF 1 at 6, 9.

Schwertz further alleges that he has brought this suit only because prison officials reneged on an earlier agreement. Schwertz said that he agreed not to sue over the mishandling of the eagle feathers in exchange for the prison letting him purchase or construct a protective case for replacement feathers. ECF 1 at 7–8. When prison officials declined to follow through on that agreement, Schwertz sued.

## Analysis

At this early stage, the Court will not dismiss Schwertz's petition. Schwertz plausibly exhausted his claims and plausibly alleges a claim under the First Amendment.

## I.

Prisoners must exhaust internal grievance procedures before suing about prison conditions. Under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a). This means exhausting the internal grievance procedures created by the prison because "it is the prison's requirements, and not the [Act], that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

At this stage of litigation, however, the Court's review of exhaustion requirements is necessarily limited. Exhaustion is an affirmative defense, so at this stage of litigation, "a court may dismiss a complaint for failure to exhaust administrative remedies [only] if it is

plain on the face of the complaint that a grievance procedure has not been exhausted." *Davis v. Torshein*, No. 1:22-cv-00080-SEP, 2022 WL 4299780, at \*2 (E.D. Mo. Sept. 19, 2022).

It is not plain from the face of the complaint that Schwertz failed to exhaust. To be clear, his attempt to exhaust administrative remedies is not the model of clarity. In the initial step of the exhaustion process, Schwertz did not discuss the underlying incident about eagle feathers. He instead requested that the defendants either purchase a case for him or else allow him to construct one to protect eagle feathers. ECF 1-1 at 40. Only after that request was denied did Schwertz follow up to say that the defendants had misunderstood his grievance and that he in fact was complaining about the mishandling of the eagle feathers. *Id.* at 43; *see also id.* at 44–51. Perhaps this attempt to exhaust was insufficient, but that is not plain solely from the face of the complaint.

## II.

On the merits, Schwertz raises no statutory question; he argues only that the prison's conduct violated the Free Exercise Clause of the First Amendment. The Court assesses whether this count is frivolous, malicious, or fails to state a claim. 28 U.S.C. § 1915(e)(2)(B). At this stage of litigation, Schwertz's claim may proceed.

Schwertz's claim is governed by *Employment Division v. Smith*, 494 U.S. 872 (1990). That doctrine is highly unusual. The last time the Supreme Court squarely addressed *Smith*, a majority of the Supreme Court said *Smith* was likely wrong. *Fulton v. City of Philadelphia, Penn.*, 593 U.S. 522, 544–618 (2021) (Alito, J., joined by Thomas and Gorsuch, JJ., concurring in the judgment) (stating that they would overrule *Smith*); *id.* at 543–44 (Barrett, J., concurring) ("As a matter of text and structure, it is difficult to see why the Free Exercise Clause—lone among the First Amendment freedoms—offers nothing more than protection from discrimination."); *id.* (Barrett, J., joined in relevant part by Kavanaugh and Breyer, JJ.,

3

concurring) (suggesting a willingness potentially to overturn *Smith* in the future if litigants briefed "what should replace *Smith*"); *see also City of Boerne v. Flores*, 521 U.S. 507, 566 (1997) (Breyer, J., dissenting) (questioning whether *Smith* was correctly decided); *Kennedy v. Bremerton Sch. Dist.*, 586 U.S. 1130, 1133 (2019) (Alito, J., joined by Thomas, Gorsuch, and Kavanaugh, JJ., concurring in denial of certiorari) (describing *Smith* as departing "drastically" from the First Amendment).  In short, a majority of the current Supreme Court has criticized *Smith* as apparently inconsistent with the First Amendment.  *Smith* lives on not because the Supreme Court agrees with it, but solely because a majority of the Supreme Court has not figured out what to replace it with.

Rarely are district courts asked to apply a doctrine that a majority of justices appear to think is wrong. Nonetheless, applying that doctrine here, Schwertz's case can proceed. Under *Smith*, governmental actions "incidentally burdening religion are ordinarily not subject to strict scrutiny under the Free Exercise Clause so long as they are neutral and generally applicable." *Fulton*, 593 U.S. at 533 (majority op.).  According to Schwertz's complaint, prison officials did not act under a neutral and generally applicable policy. Instead, they acted contrary to that policy.  The policy stated that prison officials were supposed to give Schwertz the opportunity to transfer the eagle feathers to someone outside the prison, but Schwertz says that they "disregard[ed]" this policy.  ECF 1 at 4; ECF 1-1 at 46.  Governmental actions are not neutral and generally applicable if they are subject to "individual exemptions." *Fulton*, 593 U.S. at 535.  Interpreting the complaint liberally, Schwertz has alleged that this case falls outside *Smith*.  So strict scrutiny applies, and the defendants must justify their conduct under that demanding standard.

4

**IT IS HEREBY ORDERED** that the Clerk of Court shall issue process or cause process to issue upon the defendants.

Dated this 24th day of July, 2026

JOSHUA M. DIVINE
UNITED STATES DISTRICT JUDGE
FOR THE EASTERN AND WESTERN
DISTRICTS OF MISSOURI

5